# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-0138V
Filed: July 27, 2018
UNPUBLISHED

| | |
|---|---|
| T.M.,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br><br>                  Respondent. | Special Processing Unit (SPU); Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*William E. Cochran, Jr.*, Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN , for petitioner.
*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for respondent.

## FACT RULING AND SCHEDULING ORDER[1]

**Dorsey**, Chief Special Master:

On January 30, 2017, petitioner (or "T.M.") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her left arm on October 15, 2015. Petition at ¶¶ 2-4. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons discussed below, the undersigned finds that the onset of petitioner's left shoulder injury was within 48 hours of her October 15, 2015 influenza vaccination.

---

[1] When this ruling was originally issued, petitioner was informed that the ruling would be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Petitioner was notified that she could seek redaction pursuant to 42 U.S.C. § 300aa-12(d)(4)(B); Vaccine Rule 18(b). Petitioner subsequently moved for redaction of the adult petitioner's name and the names of several of her witnesses to initials only for this ruling. The undersigned granted petitioner's motion. (ECF No. 30). Petitioner's name and the names of her witnesses have been replaced with initials in this ruling, and the caption of this case has been amended to reflect this change.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Procedural History**

On January 30, 2017, petitioner filed her petition for compensation (ECF No. 1.) She filed eight medical record exhibits and a Statement of Completion on February 7, 2017. (ECF Nos. 7-8.)  On March 21, 2017, the initial status conference was held and a deadline was set for respondent to file his status report indicating how he intended to proceed with the case.  (ECF No. 9).

On July 6, 2017, respondent filed a status report stating that a review of the medical records had been completed and respondent was willing to engage in settlement discussions.  (ECF No. 11).  The parties spent the next two months attempting to resolve the case through informal discussions.  On September 22, 2017, petitioner filed a status report stating that "[t]he parties are no longer continuing to negotiate and request a fact hearing." (ECF No. 16).

A status conference was held on October 20, 2017 with the staff attorney managing this case.  The parties stated that an issue regarding onset had arisen which would need a fact determination.  A scheduling order was issued the same day ordering petitioner to file any additional witness affidavits to help establish the onset of her shoulder injury.  A deadline was also set for respondent to file the Rule 4(c) report to help identify all the factual discrepancies in the case.  (ECF No. 19).

On November 20, 2017, respondent filed his report pursuant to Vaccine Rule 4(c) stating that compensation was not appropriate in this case under the terms of the Vaccine Act.  Respondent's Report at 1.  Respondent argued that "[a] preponderance of the evidence in this case fails to satisfy the onset requirement."  *Id.* at 5.  Respondent noted that petitioner did not seek treatment for her shoulder injury until approximately 15 weeks after her flu vaccination on October 15, 2015.  *Id.*  Respondent also noted that it was unclear whether petitioner's 2013 automobile accident and resulting injuries contributed to her current shoulder problems.  *Id.*

Subsequently, petitioner filed a second affidavit as well as the affidavits of several fact witnesses, her friend, E.K., and her friend and co-worker, C.G., both of whom stated that they observed petitioner in the 15 weeks between her receipt of flu vaccination and her first visit to a medical provider in February 2016.  Pet. Exs. 10-12.

During a status conference held on April 3, 2018, the parties agreed to file written motions for a factual finding regarding whether petitioner experienced the onset of SIRVA within 48 hours of vaccination.  (ECF No. 24).  Petitioner filed her motion for factual finding on April 11, 2018, and respondent filed his response on April 11, 2018.  (ECF Nos. 25-26).  The undersigned now issues this fact ruling.

II. **Factual History**

Petitioner was 48 years-old at the time she received the flu vaccination at issue in this case.  Petition at 1, ¶1; Petitioner's Exhibit ("Pet. Ex.") 1 at 1.  Her medical history is significant for a motor vehicle accident in June of 2013 that resulted in numerous contusions associated with pain mainly located on her left side, which was the side of

impact. *See* Pet. Ex. 1; Pet. Ex. 3 at 229-270 (primary care records). The pain was noted to be musculoskeletal involving the left arm, leg, cervical, thoracic and lumbar spine. *Id.* Her medical records indicate that she also experienced pain in her shoulders that resolved within a short period of time following the accident. *Id.* Otherwise, Petitioner's medical history does not appear to be contributory to her claim in this case.

On October 15, 2015, Petitioner received a flu vaccine in her left deltoid. Pet. Ex. 2 at 1. At the time, she was working as a psychology practicum student at the VA (Veterans Affairs) in Murfreesboro, Tennessee. Pet. Ex. 1 at 1. In her affidavit, Petitioner stated that immediately after vaccination, her left arm felt tender and painful. Pet. Ex. 1 at 2. She stated that the day after the vaccination, her arm was still in pain so she returned to the VA nurse that administered the vaccination to complain of the ongoing pain. *Id.* Petitioner states that the VA nurse told her that it was "okay." *Id.* Approximately two to three weeks after vaccination, Petitioner states that she was still in pain so she notified another VA nurse that her arm was still hurting. *Id.* Petitioner states that this nurse told her that her arm would "probably get better." *Id.*

Petitioner did not seek out formal medical attention for her shoulder injury until February 2016. In her affidavit, she states that the reason for this delay was because she believed that her shoulder pain would improve. Pet. Ex. 1 at 2. Petitioner also explained that she changed insurance companies during this time which also contributed to her delay in seeking treatment until February. *Id.*

On February 1, 2016, petitioner presented to her primary care physician, Aladraine Sands, M.D., complaining of severe left shoulder pain that started shortly after her October 15, 2015 influenza injection. Pet. Ex. 3 at 72. She reported swelling and limited range of motion. The "onset/timing" is reported as October 15, 2015, the date of her flu shot. *Id.* The record also notes that petitioner reported that "her pain in shoulder started immediately after injection." *Id.* The medical records also note that "[patient] at 3 weeks notified VA nurse, no instructions or recommendations provided . . . her pain limits dressing, opening doors and hair combing." *Id.* The physical exam showed tenderness with compression of the shoulder and deltoid area, swelling of the anterior deltoid area, pain with abduction, adduction and rotation of the shoulder, and pain posteriorly with palpation. The diagnosis was capsulitis. She was advised to apply a cold compress, prescribed physical therapy and ibuprofen, and told to return after two weeks of physical therapy. Pet. Ex. 3 at 69-75.

Petitioner underwent an initial evaluation for physical therapy on February 9, 2016 at Results Physiotherapy. Pet. Ex. 4 at 95. She reported "difficulty reaching above head to wash hair; unable to carry work bag; difficulty reaching above head to put on shirt and behind back to fasten bra; increased pain with driving; unable to lift work bag, unable to reach to shoulder height; 1-3 nightly disturbances; increase in pain with typing." Her pain level was rated at a 6/10, at worst 10/10 and at best 6/10. She also reported loss of motion and stiffness, swelling, and increased difficulty moving her arm. *Id.* The mechanism of injury is listed as the flu shot and it is noted that petitioner "continued to notice pain in her L[eft] arm a month later." Pet. Ex. 4 at 95. It is also noted that petitioner had a "3-4 month history of shoulder pain which began after patient received a flu shot in October. P[atien]t has noticed an increase in pain over the last 2

months as well as a decrease in ROM [range of motion]." Pet. Ex. 4 at 96. She was observed sitting with her left arm supported against her trunk with minimal movement of her left arm when removing her jacket. *Id.* at 96. Due to high pain levels and limited range of motion, special tests and joint mobility were unable to be assessed. Id. Due to significant weakness, decreased range of motion and pain levels, she was noted to be limited in her ability to perform activities of daily living such as bathing, dressing, sleeping, lifting and carrying. Pet. Ex. 4 at 95-101 (physical therapy records).

Petitioner returned for physical therapy sessions on February 16, 17, 22, 23, 23, March 1, 14, 15, 21, 22, 28 and 29, 2016. On March 29, 2016, her subjective examination was mostly unchanged from her initial evaluation. She reported difficulty getting dressed that morning due to pain in her shoulder. Pet. Ex. 4 at 103-146.

On March 29, 2016, Petitioner returned to her primary care physician for follow up of her left arm pain. Pet. Ex. 3 at 63-68. The history included limited motion, weakness, pain and limited ROM moving from right to left and back as well as lifting her arm above 45 degree angle. *Id.* at 65. Petitioner also reported tingling in the back of her hand and intermittent neck pain. *Id.* The physical examination demonstrated tenderness in the shoulder and deltoid, swelling of the anterior deltoid, pain with abduction, adduction and rotation of the shoulder and pain posteriorly with palpation. *Id.* at 66. In the assessment, it was noted that she had benefitted from physical therapy with some decrease in severity of her arm and shoulder pain, but she was experiencing frequent paresthesia. The assessment was left arm pain secondary to flu vaccine injection, shoulder pain and paresthesia. She was prescribed ibuprofen and referred for an EMG/NCS. *Id.* at 66.

Petitioner returned to physical therapy on April 7, 2016. Pet. Ex. 4 at 147. She reported a 50-60% improvement in her shoulder gains since the start of therapy. *Id.* She was able to brush her hair and wash the sides of her face although she still had difficulty reaching overhead and she continued to have difficulty with exercises that were not part of her normal routine. *Id.* Petitioner was discharged on April 12, 2016 by her own choice. Pet. Ex. 4 at 154-55.

On June 8, 2016, Petitioner underwent an electrodiagnostic study that did not reveal any abnormalities. Pet. Ex. 3 at 296-297. On June 24, 2016, she began physical therapy at Advanced Physical Therapy and Rehab. Pet. Ex. 5 at 1. In the history section, Petitioner reported that her left shoulder pain started after a flu shot she received on October 15, 2015.[3] *Id.* She stated that her symptoms became aggravated eight weeks prior and her pain had started to radiate to her neck and left upper extremity. *Id.* Petitioner reported that her pain level was currently at a 6/10, at best 3/10 and at worst a 9/10. She continued to have pain in her left shoulder radiating to the left side of her neck and left arm which was aggravated by overhead activities, lifting, carrying, pushing, pulling, ADLs [activities of daily living], self-care, and light house-hold chores. She returned for therapy on July 1, 6, 8, 15, 19, 22, 29 and August 2, 5, 9, September 13, 20, 21 and October 4 and 19, 2016. At her July 22, 2016

---

[3] The record incorrectly lists the date of vaccination as 10/15/16.

4

sessions, it was noted that she demonstrated improved left shoulder AROM (active range of motion), strength, cervical strength and functional ability, although she had not yet reached her normal values. *Id.* at 27-28. Her pain levels fluctuated from 3-7/10 and she had limited flexibility. While Petitioner could perform more activities around the house, she still had difficulty lifting, carrying, performing overhead activities and sleeping on her left side. By October 19, 2016, she was discharged to a home exercise program. Pet. Ex. 5 at 40-41.

On November 21, 2016, Petitioner followed up with Dr. Sands for continued complaints of left arm and shoulder pain. Pet. Ex. 9 at 1. She continued to report limited motion in her left arm as well as weakness and pain when she raised her arm above shoulder level. *Id.* at 3. On physical examination, she had tenderness of the left shoulder at the medial scapular edge with palpation, abduction pain from arch of 120-180 degrees, and pain relief with external arm rotation when at 180 degrees. Dr. Sands documented that Petitioner was still experiencing a pulling sensation of her left shoulder area with abduction and raising her arms above her head. Petitioner stated that she had been responding well to physical therapy and that she had stopped taking her ibuprofen due to her fear of gastrointestinal side effects. *Id.* at 4. Dr. Sands recommended that she consider Omega 3 and SPM active with Omegagenics as an alternative to the NSAIDs. Petitioner was instructed to return to the office on December 20, 2016 for her annual physical examination. *Id.*

Petitioner returned to Dr. Sands's office on December 20, 2016 for her annual exam. There was no mention of her left shoulder during this examination. Pet. Ex. 9 at 9-14. Petitioner did, however, decline to receive her yearly flu vaccination. *Id.* at 11, 15.

Petitioner presented to Dr. Sands's office on May 22, 2017 for complaints of foot pain. Pet. Ex. 9 at 21. During the physical examination, Dr. Sands noted that there was good range of motion of the shoulder. *Id.* at 53.

To follow up on her testing results and on her hypertension, Petitioner presented to Dr. Sands on June 26, 2017. Dr. Sands noted that Petitioner was experiencing pain in her right shoulder that was similar to the pain in her left shoulder and considered that it may be possible that the pain was being transferred to the other shoulder and possibly even to her toes. Pet. Ex. 9 at 35. Petitioner did report to Dr. Sands that the pain in her left shoulder had improved. *Id.* at 36.

On July 18, 2017, Petitioner presented to Dr. Sands for a follow-up of her shoulder pain. Pet. Ex. 9 at 42. Dr. Sands noted that Petitioner had done physical therapy in the past and was trying to work her shoulder on her own in the gym, but she was not sure if she was performing the exercises correctly. Petitioner mentioned that ibuprofen helped with her pain. *Id.* On examination, Dr. Sands noted slight tenderness of the deltoid area as well as mild swelling of the anterior deltoid area, pain with

5

abduction and adduction with rotation of the shoulder, pain with posterior abduction, and pain occurring in the upper arc around 135 degrees.  *Id.*

Petitioner filed two witness affidavits to support her position on the onset of her shoulder injury: one from a close friend, E.K., and another from a friend and co-worker, C.G..  Pet Exs. 11-12.  E.K. states in his affidavit that he has known Petitioner for 30 years and he specifically recalls that on October 18, 2015, Petitioner complained about pain in her arm from a recent flu vaccination.  Pet. Ex. 11.  C.G. also stated that she recalled Petitioner complaining of pain and limited range of motion after a recent flu vaccination.  C.G. confirmed that she worked with Petitioner over the past 3-4 years and explained that she and Petitioner were planning to exercise together that fall, but they never did because Petitioner's arm was injured from the flu vaccine.  Pet. Ex. 12 at 1.  C.G. also stated that while she does not recall the exact date of vaccination, she does recall that Petitioner complained of constant pain that started immediately following vaccination.  *Id.*  C.G. stated that she observed Petitioner at work in between meetings massaging her shoulder and encouraged Petitioner to follow up with the clinic that administered the vaccination to address her problems.  *Id.*

### III.     **Parties' Arguments**

Petitioner argues that her medical records substantiate her claim that she experienced the onset of her shoulder symptoms within 48 hours of vaccination.  Petitioner's Motion for Factual Finding at 2 (ECF No. 25).  She states that there is no genuine dispute that she experienced pain immediately after her October 15, 2015 vaccination, citing to numerous references in the medical records where she reported that her shoulder symptoms began immediately after or shortly following her flu vaccination.  *Id.* at 3-4.  Petitioner notes that there is no evidence to the contrary and there is no genuine dispute that petitioner meets the onset requirement for a SIRVA claim.  *Id.* at 4.

In his response, respondent incorporated the legal analysis set forth in his Rule 4(c) report.  Respondents' Response to Petitioner's Motion at 1 (ECF No. 26).  Respondent states that the additional affidavits that were filed in support of her claim after the filing of the Rule 4(c) report do not provide preponderant evidence that the onset of petitioner's shoulder injury occurred within 48 hours of vaccination.  *Id.*  Respondent argues that even if petitioner has provided some evidence that her shoulder pain began shortly after vaccination, the 15-week delay in seeking treatment, combined with the fact that the affidavits were executed roughly two-years after the events they describe render the evidence insufficient to establish more likely than not, that petitioner's shoulder pain began within 48 hours of her vaccination.  *Id.* at 2.

### IV. Discussion

#### a. Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed.Cir.1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

There are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking."); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be afforded. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

Despite the weight afforded medical records, special masters are not bound rigidly by those records in determining onset of a petitioner's symptoms. *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. Sec'y of Health & Human Servs.*, No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to *consider* the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court *to be bound* by them").

### b. Onset period for a SIRVA Injury

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table ("Table"). *See* Vaccine Injury Table: Qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(10). Although petitioner's claim was filed before SIRVA was added to the Table, and thus cannot be found to be a SIRVA Table injury, the undersigned's findings were informed by the Qualifications and Aids to Interpretation for SIRVA criteria used to evaluate such claims. The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.; see also* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan T, Lightfoot R, and Johann-Liang R, 2010, *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052). The criteria at issue in this case is whether Petitioner's pain occurred within the specified time-frame of 48 hours or less after administration of her October 15, 2015 flu vaccination. The undersigned finds that it does.

### c. Evaluation of the Evidence

It is undisputed that Petitioner was not formally seen by a healthcare provider until February 1, 2016, approximately 15 weeks after her October 15, 2015 flu shot. However, the medical records consistently place the onset of her shoulder pain within 48 hour of the administration of her flu vaccine. On February 1, 2016, Petitioner was seen by her primary care provider, Aladraine Sands, M.D., with complaints of pain in her left shoulder which she states "started immediately after injection." It is also noted that that "[patient] at 3 weeks notified the VA nurse, [but] no instructions or recommendations [were] provided." Pet. Ex. 3 at 72. Petitioner reported that since that time, she had been experiencing difficulty with dressing, opening doors and hair combing. Pet. Ex. 3 at 69-73. This is the most contemporaneous medical record filed and Petitioner clearly places the onset of her shoulder injury as occurring within 48 hours of vaccination. *See also* Pet. Ex. 1 at 2 (Petitioner states in her affidavit that her left arm pain began "immediately after vaccination"); Pet. Ex. 3 at 72 (record dated February 1, 2016 reports that petitioner's severe left shoulder pain started "shortly after" her flu injection; "onset/timing reported: 10/15/15"; petitioner states "that her pain in shoulder started immediately after injection."); Pet. Ex. 4 at 95 (record dated February 9, 2016 lists the mechanism of injury as the "flu shot" and it is noted that petitioner had a "3-4 month history of shoulder pain which began after patient received a flu shot in

October" which would place onset between October 9 and November 9, 2015). Petitioner is accurate in stating that there is no evidence in the medical records to the contrary.

Regarding her delay in seeking treatment, the undersigned finds Petitioner's explanation to be credible in light of her circumstances and situation at the time. The undersigned credits Petitioner's statement that she sought out advice from the VA nurse who administered the vaccine and waited to see if her shoulder symptoms would improve. Her claims are supported by Dr. Sands's medical records where it is documented that Petitioner made these exact same statements. *See* Pet. Ex. 3 at 72. Her claims are also bolstered by the witness affidavits where E.K. and C.G. state that they observed or recalled hearing Petitioner complain of shoulder pain in the time period between vaccination and February 1, 2016. C.G. specifically states that she recalls that Petitioner complained of constant pain that started "immediately after vaccination." Pet. Ex. 12. The undersigned also credits Petitioner's statement that a change in her insurance provider caused her to delay seeking treatment until February 1, 2016.

Respondent argues that the Vaccine Act "forbids a Special Master from making an entitlement finding 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." (citations omitted) Respondent's Report at 5. In this case, Petitioner specifically states that she did not seek out medical attention for several months after her vaccination, thus, there would be no contemporaneous medical records in existence to substantiate her claim. Her own testimony, or the testimony of fact witnesses, would be the sole evidence available and Petitioner has provided her affidavit testimony as well as the affidavit testimony of two witnesses that observed her ongoing shoulder pain in the months between the date of vaccination and her first appointment with Dr. Sands. And as detailed above, there are numerous medical records that support her claim of onset. Indeed, there are no notations in the medical records placing the onset her shoulder injury as anything other than immediate. Based on the medical record evidence, the affidavit testimony of petitioner and other fact witnesses, the undersigned finds that there is preponderant proof of evidence that the onset of Petitioner's left shoulder pain occurred within 48 hours of her October 15, 2015 flu vaccination.

Finally, to address respondent's statement in the Rule 4(c) report that "it was unclear whether petitioner's 2013 automobile accident and resulting injuries contributed to her current shoulder problems," the undersigned notes that in the Rule 4(c) report, respondent specifically states that Petitioner's left arm and shoulder pain after the accident "*were minor and documented to have resolved over the months after the accident… There is no documentation to suggest ongoing shoulder issues after March of 2014.*" (emphasis added) *Id.* at 2. The undersigned has carefully reviewed Petitioner's pre-vaccination records and agrees that Petitioner's left arm and shoulder symptoms resolved by March of 2014 and therefore, did not contribute to her shoulder injuries from her October 15, 2015 vaccination.

As discussed above, under the SIRVA criteria, the onset of the symptoms of petitioner's shoulder pain must begin within 48 hour or less of the vaccination. The undersigned finds that the onset of Petitioner's shoulder pain began within 48 hours of vaccination.

### V.     **Conclusion**

**The undersigned finds, based on the record as a whole, that the onset of petitioner's left shoulder pain was within forty-eight (48) hours of her October 15, 2015 influenza vaccination.**

The parties have previously indicated that even if the issue of onset is resolved in petitioner's favor, the issue of damages (specifically pain and suffering) would continue to be in dispute. *See* Scheduling Order dated Oct. 20, 2017 (ECF No. 19). Nevertheless, the parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by **Monday, August 27, 2018,** updating the Court on the status of the parties' discussions to resolve this claim. If the parties are still unable to reach a resolution of damages, then the status report shall state which items of damages are in dispute and how each party would like to resolve those issues, either by hearing or by submitting briefing.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master
